UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| KHAMPHEE KELLS, et al., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:08-CV-1582 CAS |
| ) | |
| JANET NAPOLITANO,[1] Secretary, U.S. ) | |
| Department of Homeland Security, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

Pending before the Court are defendants Janet Napolitano and Alejandro Mayorkas's[2] (collectively, the "Government") motion to dismiss, or in the alternative for summary judgment, and plaintiffs Khamphee Kells, M.S. and E.B.'s[3] cross-motion for summary judgment. The Government seeks the dismissal of plaintiffs' Complaint for Declaratory and Injunctive Relief and Petition for Writ of Mandamus ("Complaint"), while plaintiffs are seeking summary judgment granting the relief requested in the Complaint. For the following reasons, plaintiffs' motion for summary judgment will be granted, and the Government's motion to dismiss, or in the alternative for summary judgment will be denied.

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Janet Napolitano, the confirmed successor to former Secretary Michael Chertoff, who was named as a defendant in this action in his official capacity, is automatically substituted as the proper party defendant in this action.

[2] Pursuant to Federal Rule of Civil Procedure 25(d), Alejandro Mayorkas, a confirmed successor to former Acting Director of U.S. Citizenship and Immigration Services Jonathan Scharfen, who was named as a defendant in this action in his official capacity, is automatically substituted as the proper party defendant in this action

[3] Plaintiffs M.S. and E.B. are the minor children of plaintiff Khamphee Kells.

*Background*

The relevant facts in this case are undisputed. Plaintiffs Khamphee Kells is the mother of plaintiffs E.B. and M.S. All three plaintiffs are citizens of Thailand. Plaintiffs were legally admitted to the United States on July 1, 2005, as B-2 visitors, with valid visas through December 31, 2005. On July 21, 2005, Khamphee Kells (nee Bloma) married Sergeant Robert William Kells, a United States citizen and active-duty recruiter for the United Sates Navy, in Washington, Missouri. Upon the marriage of Mrs. Kells to Sgt. Kells, M.S. and E.B., who were both under 18 time at the time, became the "children" of Sgt. Kells under the Immigration and Naturalization Act, 8 U.S.C. § 1101 (b)(1)(B).

In October 2005, Sgt. Kells filed I-130 petitions with the U.S. Citizenship and Immigration Services ("USCIS") for Alien Relatives for all three plaintiffs. The plaintiffs filed I-485 Applications for Adjustment of Status in October 2005 as well. The I-30 petitions and I-485 applications were rejected on November 14, 2005, because the incorrect fees had been submitted with the documents. All of the petitions and applications were resubmitted with the correct fees on December 26, 2005, and were received and accepted for processing on January 4, 2006.

On March 11, 2006, Sgt. Kells was killed in a motorcycle accident. At the time of his death, he and Mrs. Kells had been married almost eight (8) months. The USCIS had not adjudicated plaintiffs' Form I-130 petitions or Form I-485 applications at the time of Sgt. Kells's death. On July 10, 2007, USCIS denied plaintiffs' I-130 petitions and the I-485 applications. The I-130 petitions were denied on the basis that upon the death of Sgt. Kells, Mrs. Kells, M.S. and E.B. no longer met the definition of "immediate relatives" under 8 U.S.C. § 1151(b)(2)(A)(i). The I-485 applications were denied because their approvals were dependant on the approvals of the I-130 petitions.

On March 2, 2007, prior to the denial of the I-130 petition and I-485 applications, USCIS initiated and approve deferred action for Mrs. Kells, E.B. and M.S. After the expiration of the initial deferred action period, USCIS approved another period of deferred action on October 15, 2008, which expires October 14, 2009. USCIS has not initialed removal proceedings against Mrs. Kells, M.S., and E.B.

On October 14, 2008, plaintiffs filed their Complaint in this Court. In their Complaint, plaintiffs request a determination that, as a matter of law they are "immediate relatives" of a United States citizen for purposes of the adjudication of the Form I-130 petitions filed their behalf and their Form I-485 applications for Adjustment of Status. Plaintiffs request the following injunctive, declaratory, and mandamus relief: (1) declare that plaintiffs filed the necessary petitions and applications for lawful permanent resident status, and were not stripped of the status of "spouse" or "child" of a United States citizen upon the death of the citizen relative; (2) declare that plaintiffs are "entitled to the process that flows from a properly filed petition and application," and must be considered a spouse or child for purposes of the petitions and applications; (3) declare that plaintiffs are "immediate relatives" under 8 U.S.C. § 1151(b)(2)(A)(i) and for the purposes of adjudicating an I-130 petition; (4) issue a writ of mandamus compelling defendants to (a) reopen plaintiffs' adjustment of status applications on the ground that the applications were unlawfully denied on the basis of defendants' erroneous determination that plaintiffs' status as "immediate relatives" of a United States citizen were stripped by the death of plaintiffs' relative; (b) treat plaintiffs as "immediate relatives" and adjudicate the immigrant petitions filed on plaintiffs' behalf accordingly, and (c) treat plaintiffs as "immediate relatives" and exercise discretion to adjudicate plaintiffs' adjustment of status applications.

3

In its motion to dismiss, or in the alternative for summary judgment, the Government argues that plaintiffs' complaint should be dismissed for lack of jurisdiction because plaintiffs failed to exhaust their administrative remedies. It also argues that it is entitled to judgment as a matter of law because, in light of Sgt. Kells's death, under 8 U.S.C. § 1151(b)(2)(A)(i), the I-130 petitions filed on plaintiffs' behalf must be denied because plaintiffs are no longer "immediate relatives" of a U.S. citizen. Plaintiffs filed a cross-motion for summary judgment arguing that they are entitled to judgment as a matter of law because they remain "immediate relatives" under 8 U.S.C. § 1151(b)(2)(A)(i), in spite of Sgt. Kells's death.

*Discussion*

The Immigration and Nationality Act ("INA") regulates the number of immigrant visas issued in a given year. Section 1151(a) generally establishes quotas for the number of immigrants that may be issued visas from each foreign country. See 8 U.S.C. § 1151(a). Sub-section (b), however, describes categories of aliens who are not subject to the quotas in § 1151(a), including "immediate relatives" of U.S. citizens. See 8 U.S.C. § 1151(b).

In pertinent part, 8 U.S.C. § 1151(b)(2)(A)(1) provides:

(2)(A)(i) Immediate relatives: – For purposes of this subsection, the term "immediate relatives" means the children, spouses, and parents of a citizen of the United States, except that, in the case of parents, such citizens shall be at least 21 years of age. In the case of an alien who was the spouse of a citizen of the United States for at least 2 years at the time of the citizen's death and was not legally separated from the citizen at the time of the citizen's death, the alien (and each child of the alien) shall be considered, for purposes of this subsection, to remain an immediate relative after the date of the citizen's death but only if the spouse files a petition under section 1154(a)(1)(A)(ii) of this title within 2 years after such date and only until the date the spouse remarries . . . . 8 U.S.C. § 1151(b)(2)(A)(1).

4

The term "spouse" is not defined by the INA, but the Act requires that both parties be present for the marriage ceremony. 8 U.S.C. § 1101 (a)(35). The term "child" is defined, in part, "as an unmarried person under twenty-one years of age who is: "a stepchild, whether or not born out of wedlock, provided the child had not reached the age of eighteen years at the time the marriage creating the status of stepchild occurred." 8 U.S.C. § 1101 (b)(1)(B).

A U.S. citizen may file an immediate relative visa petition with the USCIS – a Form I-130 – on behalf of an alien-spouse or alien-child. See 8 U.S.C. § 1154(a)(1)(A)(i); 8 C.F.R §§ 204.1(a)(1) and 204.2(a). USCIS is to conduct an investigation of every Form I-130 petition, in part to determine whether the marriage is valid. See 8 U.S.C. § 1154(a) - (b).[4] If the USCIS determines the marriage is "valid," then it "shall" approve the Form I-130 petitions for the spouse and children. See 8 U.S.C. § 1154(b).

Approval of the Form I-130 petition allows an alien immediate relative who is lawfully in the United States under a temporary visa to apply for adjustment of status – a Form I-485 application.[5] See 8 U.S.C. § 1255(a). The Form I-485 application is essentially a request to become a lawful permanent resident. See Freeman, 444 F.3d at1042. Permanent status is contingent upon approval of the Form I-130 petition. An immigrant visa must be immediately available to an alien in order to qualify for adjustment of status. Id. Without an approved Form I-130 petition, an immigrant visa

---

[4] A widower or widow may not file the Form I-130 petition on his or her own behalf unless the couple had been married for at least two years at the time of the citizen-spouse's death. See 8 U.S.C. § 1151(b)(2)(A)(i). This provision is clearly inapplicable to Mrs. Kells because it is undisputed that she was married to Sgt. Kells for less than two years prior to his death.

[5] In order to expedite the process, Form I-485 applications are often filed, as here, at the same time Form I-130 petitions are filed. See, e.g., Freeman v. Gonzalez, 444 F.3d 1031, 1033 (9th Cir. 2006). As soon as the Form I-130 petition is approved, the USCIS may process the Form I-485 application.

is not immediately available and the USCIS will deny the Form I-485 application.

## I. MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

The Government argues this Court lacks subject matter jurisdiction over this dispute because plaintiffs failed to exhaust their administrative remedies and there has been no final decision by the USCIS. The Government argues that although it has not commenced removal proceedings against plaintiffs, that once the removal proceeding begin, plaintiffs will have an opportunity to file adjustment of status applications for consideration by the Immigration Judge and review by the board. The Court does not find the Government's argument to be persuasive. Plaintiffs are not challenging the adjudication of their I-485 application, but rather, they are challenging the Government's interpretation of "immediate relative," which resulted in the automatic denial of their I-130 petitions. The Government has deferred removal proceedings, and moreover, the Executive Office of Immigration Review ("EOIR") does not have jurisdiction over Form I-130 petitions. See Matter of Sano, 19 I. & N. Dec. 299, 301, 1985 WL 56053 (BIA 1985); Taing v. Chertoff, 526 F. Supp. 2d 177, 180 (D. Mass. 2007). Because plaintiffs' I-485 applications are entirely dependent on the approval of I-130 petitions, it would be futile for plaintiffs to renew their I-485 applications once the Government does commence removal proceedings before the EOIR. See Taing, 526 F. Supp. 2d at 180. The opportunity to renew the applications in removal proceedings is therefore functionally meaningless, and the Court finds plaintiffs have exhausted their administrative remedies.

In its combined reply/response memorandum, the Government argues for the first time that plaintiffs' claims are precluded by 8 U.S.C. §§ 1252(a)(2)(D), (b)(9) and (d)(1). These subsections of the INA were passed as part of the REAL ID Act of 2005. The Court finds none of these provisions preclude review of plaintiffs' claims in this case. Section 1252 is entitled "Judicial review

of orders of removal," and no such review is being sought in this case. Al Jabari v. Chertoff, 536 F. Supp. 2d 1029, 1038 (D. Minn 2008). The issues in this case are separate from any removal proceedings and thus do not "aris[e] from any action taken or proceeding brought to remove an alien . . . ." 8 U.S.C. § 1252 (b)(9). See also § 1252 (d)(1) ("[a] court may review *a final order of removal* only if . . .") (emphasis added). Furthermore, the meaning of "immediate relative" under 8 U.S.C. § 1151(b)(2)(A)(i) is a purely legal question that does not implicate the discretionary authority of the USCIS. See Robinson, 554 F.3d at 360; Freeman, 444 F.3d at 1037 (finding the proper definition of "spouse" under § 1151(b)(2)(A)(i) to be a purely legal question). For these reasons, 8 U.S.C. §§1252(a)(2)(D), (b)(9) and (d)(1) do not bar plaintiffs' claims.

Courts in factually and procedurally analogous cases have consistently found that the district courts have jurisdiction over the issues at bar in this case. See Lockhart v. Napolitano, 573 F.3d 251, 254 (6th Cir. 2009); Taing v. Napolitano, 567 F.3d 19, 23 (1st Cir. 2009); Robinson v. Napolitano, 554 F.3d 358, 360 (3d Cir. 2009); Freeman, 444 F.3d at 1037. In sum, the Court finds it has jurisdiction under 28 U.S.C. § 1331, and section 704 of the Administrative Procedure Act, 5 U.S.C. §§ 701, et seq, to determine, as a matter of law, the meaning of "immediate relative" status under 8 U.S.C. § 1151(b)(2)(A)(i).

## II. MOTION FOR SUMMARY JUDGMENT AND TO DISMISS FOR FAILURE TO STATE A CLAIM

In its motion to dismiss, or in the alternative for summary judgment, the Government argues it is entitled to judgment as a matter of law because, in light of Sgt. Kells's death, the I-130 petition filed on plaintiffs' behalf must be denied because plaintiffs are no longer "immediate relatives" of a U.S. citizen under 8 U.S.C. § 1151(b)(2)(A)(i). Plaintiffs argue in their motion for cross-motion for

7

summary judgment that they are entitled to judgment as a matter of law because they remain "immediate relatives" under 8 U.S.C. § 1151(b)(2)(A)(i), in spite of Sgt. Kells's death.

### A. Standard of Review

The standard applicable to summary judgment motions is well-settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). On a motion to dismiss, the Court is to accept as true the factual allegations contained in the complaint and then determine whether the allegations establish that the pleader is entitled to relief. Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955 (2007). See also Fed. R. Civ. P. 8(a)(2).

In this case, the material facts are not in dispute. The issue is whether the USCIS erred in interpreting the relevant statute (8 U.S.C. § 1151(b)(2)(A)(i)) as excluding plaintiffs from the definition of "immediate relatives" solely because Sgt. Kells died after filing plaintiffs' I-130 petitions but before the USCIS had adjudicated their petitions. This is purely an issue of law.

### B. Analysis

There is a split of authority with respect to the definition of "immediate relative" status under 8 U.S.C. § 1151(b)(2)(A)(i), and what effect the death of the U.S. citizen who properly filed a petition on behalf of his or her alien family members has on the petition if the death occurred before the petition was adjudicated and within two years of the couple's marriage. The Eighth Circuit has not addressed this issue.

The First, Sixth and Ninth Circuits have held that § 1151(b)(2)(A)(i) requires the USCIS to treat an alien in Mrs. Kells's position as an "immediate relative" for purposes of adjudicating a Form

8

I-130 petition. Taing v. Napolitano, 567 F.3d 19 (1st Cir. 2009); Lockhart v. Napolitano, 561 F.3d 611 (6th Cir. 2009); Freeman v. Gonzalez, 444 F.3d 1031 (9th Cir. 2006). The Third Circuit has reached the opposite conclusion. Robinson v. Napolitano, 554 F.3d 358 (3d Cir. 2009). The court in Robinson held that an alien in Mrs. Kells's position is no longer an "immediate relative" under § 1151(b)(2)(A)(i). Id. at 365. Upon consideration of the issues, this Court agrees with the analysis and conclusions of the First, Sixth and Ninth Circuits.

The Administrative Procedure Act ("APA") provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. The APA empowers courts to "hold unlawful and set aside" agency actions and conclusions that are, among other things, "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;" or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(A) and (C).

In considering an agency's interpretation of a statute that it administers, a reviewing court must determine whether that interpretation is entitled to deference and, if so, how much. Godinez-Arroyo v. Mukasey, 540 F.3d 848, 850 (8th Cir. 2008)(citing, inter alia, Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837 (1984) and Skidmore v. Swift & Co., 323 U.S. 134 (1944)). This involves a two-step process. First, the Court must address, using "traditional tools of statutory" whether "the intent of Congress is clear." Baptist Health v. Thompson, 458 F.3d 768, 773 (8th Cir. 2006) (quoting Regions Hosp. v. Shalala, 522 U.S. 448, 457 (1998) and Chevron, 467 U.S. at 842, 843 & n. 9, n. 11 (1984)). If it is, that is the end of the matter. Id. There is no need to defer to the agency's interpretation, and the court "must apply the statute according to its terms."

9

Carcieri v. Salazar, 129 S.Ct. 1058, 1063-64 (2009). But should the Court find that the language of the statute "ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." Chevron, 467 U.S. at 843. Here, the Court concludes that it is plain and unambiguous under the language of § 1151 (b)(2)(A)(i) that Sgt. Kells's death does not strip the plaintiffs of their "immediate relative" status.

To interpret the statute, the Court must first "determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." Milavetz, Gallop & Milavetz, P.A. v. U.S., 541 F.3d 785, 791 (8th Cir. 2008) (quoting Robinson v. Shell Oil Co., 519 U.S. 337, 340 (1997)). "Interpretation of a word or phrase depends upon reading the whole statutory text, considering the purpose and context of the statute, and consulting any precedents or authorities that inform the analysis." Dolan v. U.S. Postal Service, 546 U.S. 481, 486 (2006).

The first sentence of § 1151(b)(2)(A)(i) expressly includes "spouses" within the definition of "immediate relatives": "For purposes of this subsection, the term 'immediate relatives' means the children, spouses, and parents of a citizen of the United States, except that, in the case of parents, such citizens shall be at least 21 years of age." 8 U.S.C. § 1151(b)(2)(A)(i). In the first sentence, only "parents" are subject to any limitation in qualifying as "immediate relatives." There is no comparable qualifier for the term "spouses." Thus, it must be assumed that Congress intended no limitation on that term beyond the requirement set forth elsewhere in the INA that both parties be present for the marriage ceremony. See Taing, 567 F.3d at 26; Lockhart, 561 F.3d at 616; Freeman, 444 F.3d at 1039. If Congress intended to limit the eligibility of spouses, presumably it would have done so by using language similar to that of the limitations placed on parents. Keene Corp. v. U.S., 508 U.S. 200, 208 (1993) ("[W]here Congress includes particular language in one section of a statute

but omits it in another ..., it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.")).

Congress did not define the term "spouse" in the INA,[6] but there is a common understanding that the term is inclusive of surviving spouses.[7] In the 6th Edition of Black's Law, the edition that would have been available to Congress when it amended § 1151 in 1990, "surviving spouse" is included under the heading for the definition of "spouse." "Spouse" is defined as "[o]ne's husband or wife, and 'surviving spouse' is one of a married pair who outlives the other." Black's Law Dictionary (6th ed. 1990). "Surviving spouse" is defined as "the spouse who outlives (survives) the other spouse." Id. In the second sentence of 8 U.S.C. § 1151(b)(2)(A)(i) itself, there is evidence that in common usage the term spouse includes surviving spouse. The second sentence uses the term "spouse" in the present tense to refer to a surviving spouse. See discussion infra. This suggests that the term "spouse" in the first sentence of 8 U.S.C. § 1151(b)(2)(A)(i) encompasses individuals whose spouses have died.[8]

---

[6] The INA does state that the term "spouse" excludes "a spouse, wife or husband by reason of any marriage ceremony where the contracting parties thereto are not physically present in the presence of each other, unless the marriage shall have been consummated." 8 U.S.C. § 1101(a)(35).

[7] The Government's argument that Mrs. Kells is no longer a "spouse" because her marriage ended upon the death of her husband is misguided. While it is well-settled that a marriage ends upon death, the issue before the Court is not whether Mrs. Kells remains married, but whether she is a spouse within in the meaning of the statute. The fact that her marriage ended upon Sgt. Kells's death does not control whether she was and remains a "spouse" and ergo an "immediate relative."

[8] Congress's use of "spouse" in this manner to including surviving spouse is not limited to this section of the INA. See 8 U.S.C. § 1183a(a)(3)(B)(ii) (crediting an alien for the time period of Social Security coverage for "all of the qualifying quarters worked by a spouse of such alien during their marriage and the alien remains married to such spouse or such spouse is deceased."); 5 U.S.C. § 8341(e)(3) ("On the death of the surviving spouse or former spouse or termination of the annuity of a child, the annuity of any other child or children shall be recomputed and paid as though *the spouse*, former spouse, or child had not survived the employee or Member.") (emphasis added); 25 U.S.C.

Despite Congress's use of the term "spouse" within the same subsection to refer to a surviving spouse, the Government argues that the second sentence of § 1151(b)(2)(A)(i) must be read in conjunction with the first sentence, and the second sentence expressly modifies the term "spouse" in the first sentence to exclude alien widows who were married to a United States citizen for less than two years from the definition of "immediate relatives." This Court does not find this argument to be persuasive. As the appellate courts in Taing, Lockhart, and Freeman concluded, the second sentence of § 1151(b)(2)(A)(i), rather than modifying the first sentence, most logically reads as creating a separate and independent right for certain alien spouses to self-petition for "immediate relative" status. The second sentence says nothing about an alien with an I-130 application pending whose citizen-spouse died before the couple had been married for two years. Rather, it addresses "an alien who was the spouse of a citizen of the United States for at least two years at the time of the citizen's death . . ." and who has not yet filed an I-130 petition. 8 U.S.C. § 1151(b)(2)(A)(i). "There is nothing in the language of the second sentence to imply that it was intended to strip away 'spouse' status from a surviving spouse whose deceased spouse had already filed an I-130 petition." Taing, 567 F.3d at 26-7. The second sentence provides for a particular class of spouses the opportunity to self-petition for permanent residence status.

In addition to being against the common understanding of the term "spouse" and how the

---

§ 2206(j)(2)(A)(i) ("[I]f the surviving spouse of a testator married the testator after the testator executed the will of the testator, the surviving spouse shall receive the intestate share in the decedent's trust or restricted land and trust personalty that *the spouse* would have received if the testator had died intestate.") (emphasis added). The term has also been used in this manner in administrative regulations. See 22 C.F.R. § 42.21(b) ("*The spouse* of a deceased U.S. citizen, and each child of *the spouse*, will be entitled to immediate relative status after the date of the citizen's death . . . .") (emphasis added).

term was used by Congress within the INA itself, the Government's proposed interpretation of "spouse" would lead to absurd and arbitrary results. As the courts in Freeman, Lockhart, and Taing noted, the Government's proposed interpretation of § 1151(b)(2)(A)(i) would create arbitrary, irrational, and inequitable outcomes because similarly-situated petitions will be treated differently depending upon when the government reviews the petitions. Taing, 567 F.3d at 31; Lockhart, 561 F.3d at 620; Freeman, 444 F.3d at 1043. As the Freeman court stated, "an alien's status as a qualified spouse should not turn on whether [the reviewing agency] happens to reach a pending application before the citizen spouse happens to die." 444 F.3d at 1043. This Court concurs that Congress did not intend for widows and widowers, with properly filed I-130 applications filed prior to the deaths of their spouses, to be penalized because USCIS did not adjudicate their applications in a timely manner. If the Court were to construe § 1151(b)(2)(A)(i) as the Government would have it do, it would lead to the absurd result that an alien spouse's status might hinge solely on the amount of time it takes for a petition to be processed – a factor that is completely out of the spouse's control.

After considering "the whole statutory text," "the purpose and context of the statute," and cases from other Circuits that have addressed this identical issue, Dolan, 546 U.S. at 486, the Court finds that the plain and unambiguous language of § 1151(b)(2)(A)(i) establishes that Congress intended a widow or widower married less than two years to remain an "immediate relative" where the citizen spouse submitted an I-130 petition but died prior to its adjudication.

Despite the plain and unambiguous language of § 1151(b)(2)(A)(i), the Government contends that this Court must defer to the BIA's decision in Matter of Varela, 13 I & N Dec. 453 (BIA 1970). The BIA held in Varela that an alien is no longer a "spouse" and hence an "immediate relative" of a United States citizen when the citizen dies before the Form I-130 application is adjudicated. Id. at

453-54.  Because the Court finds that the language of the statue in question clearly establishes that Congress did not intend that the death of a U.S. citizen spouse would strip the surviving spouse of his or her "immediate relative" status, the Court need not give Chevron deference to the BIA's decision in Varela. Carcieri, 129 S.Ct. at 1063-64.  What is more, the Court is in agreement with the Taing court that the decision is not even entitled consideration under a less deferential standard:

> Even if we were to consider Varela under the less deferential standard articulated in Skidmore v. Swift & Co., 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124 (1944), it fails to persuade us for two main reasons.  First, the opinion summarily rules in favor of the government and does not engage in an adequate analysis of the statutory text.  Second, the BIA later found this decision to be extra-jurisdictional in Matter of Sano, 19 I & N Dec. 299 (BIA 1985), thereby making Varela a non-precedential decision.

Taing, 567 F.3d at 30 (citations and footnotes omitted).

For all the above-stated reasons, the Court concludes Mrs. Kells continues to qualify as an "immediate relative" for purposes of § 1151(b)(2)(A)(i), despite the death of her husband prior to the adjudication of her petition and application.

As for the plaintiff children, unlike the term "spouse," the term "child" is defined by the INA.  It is defined, inter alia, as "an unmarried person under twenty-one years of age who is . . . a stepchild, whether or not born out of wedlock, provided the child had not reached the age of eighteen years at the time the marriage creating the status of stepchild occurred . . . ." 8 U.S.C. § 1101 (b)(1)(B).  There is no limitation in the definition that would terminate the status of "child" upon the death of a parent.  The Court also believes that is it common understanding that a person remains the child of a parent upon the death of that parent, and this holds true even if the parent was a step-parent.  The Government has offered no specific legal arguments or authority for its proposition that under the INA a child is no longer the child of a citizen-parent upon that parent's death.  And the Court finds

that the arguments the Government has put forth as to why a window or widower no longer qualifies as a "spouse" are not applicable to the term "child," or as detailed above, they are not persuasive.

*Conclusion*

For the forgoing reasons, the Court finds plaintiffs have demonstrated that the Government took an action based on a conclusion that was "not in accordance with law." 5 U.S.C. § 706(2)(A). The Court finds the Government unlawfully denied plaintiffs' I-130 petitions when it found that upon Sgt. Kells's death, plaintiffs no longer qualified as "immediate relatives" under 8 U.S.C. § 1151(b)(2)(A)(i). Contrary to the Government's position, the Court finds plaintiffs remain "immediate relatives" under 8 U.S.C. § 1151(b)(2)(A)(i), and they are entitled to relief.

Accordingly,

**IT IS HEREBY ORDERED** that the Government's Motion to Dismiss and, in the alternative, Motion for Summary Judgment are **DENIED.** [Doc. 4]

**IT IS FURTHER ORDERED** that plaintiffs' Cross-Motion for Summary Judgment is **GRANTED.** [Doc. 15]

**IT IS FURTHER ORDERED** that plaintiff's Motion for Oral Argument is **DENIED** as moot. [Doc. 20]

**IT IS FURTHER ORDERED** that this case is hereby **REMANDED** to the U.S. Citizenship and Immigration Services for re-adjudication consistent with this opinion. More specifically, the agency shall re-open for adjudication Khamphee Kells's, E.B.'s, and M.S.'s Form I-130 petitions and Form I-485 applications. In re-adjudicating said petitions and applications, the agency shall treat plaintiffs as "immediate relatives" under 8 U.S.C. § 1151(b)(2)(A)(i).

An appropriate judgment will accompany this order.

　　　　　　　　　　　　　　　　　　　　　　__/s/ Charles A. Shaw_____
　　　　　　　　　　　　　　　　　　　　　　**CHARLES A. SHAW**
　　　　　　　　　　　　　　　　　　　　　　**UNITED STATES DISTRICT JUDGE**

Dated this __29th__ day of September, 2009.